# UNITED STATES DISTRICT COURT

### OFFICE OF THE CLERK
### DISTRICT OF KANSAS

259 ROBERT J. DOLE U.S. COURTHOUSE
500 STATE AVENUE
KANSAS CITY, KS 66101

**SKYLER B. O'HARA**
CLERK
E-MAIL: Skyler_OHara@ksd.uscourts.gov
(913) 735-2220

204 U.S.COURTHOUSE
401 N. MARKET
WICHITA, KS 67202

June 11, 2025

**STEPHANIE MICKELSEN**
CHIEF DEPUTY CLERK
E-MAIL: Stephanie_Mickelsen@ksd.uscourts.gov
(913) 735-2235

490 U.S.COURTHOUSE
444 NE QUINCY
TOPEKA, KS 66683

**SEE NOTICE OF ELECTRONIC FILING**

Pro Se Topeka or 2255 Appeal

RE:  Kevin Tamar Davis v. Jesse Howes, et al.

District Court Case No.:    24-3143-JWL

Notice of Appeal filed by:   Kevin Tamar Davis

Fee Status:                Pending

      The following documents are for the parties in connection with the Notice of Appeal:
Notice of Appeal and Copy of the Docket Sheet.

      If you have any questions, please contact the Office of the Clerk of the U.S. Court of
Appeals in Denver, Colorado at (303)844-3157.

Sincerely,
SKYLER B. O'HARA
CLERK OF COURT

By: _s/S. Nielsen-Davis_____
Deputy Clerk

Cc: Clerk, U.S. Court of Appeals
      (Notice of Appeal, Docket Sheet, & Preliminary Record)

CLOSED,APPEAL,SA,PLC2,S3

# U.S. District Court
# DISTRICT OF KANSAS (Topeka)
# CIVIL DOCKET FOR CASE #: <u>5:24–cv–03143–JWL</u>

Davis (ID 83253) v. Howes et al
Assigned to: District Judge John W. Lungstrum
Cause: 42:1983 Prisoner Civil Rights

Date Filed: 08/19/2024
Date Terminated: 06/04/2025
Jury Demand: Plaintiff
Nature of Suit: 555 Habeas Corpus (Prison Condition)
Jurisdiction: Federal Question

**Plaintiff**

**Kevin Tamar Davis**
*83253*

represented by **Kevin Tamar Davis**
83253
LANSING Correctional Facility
PO Box 2
Lansing, KS 66043–0002
Email: <u>KDOC_court_file_lcf@ks.gov</u>
PRO SE
*Bar Number:*
*Bar Status:*

V.

**Defendant**

**Jesse Howes**
*Chief Warden, Lansing Correctional Facility, in his individual and official capacity*

**Defendant**

**James Skidmore**
*Deputy Warden of Operations, Lansing Correctional Facility, in his individual and official capacity*
***TERMINATED: 10/23/2024***

**Defendant**

**Fred Cannon**
*KDOC Regional Dental Director @ Lansing Correctional Facility, contracted through Centurion Health Services, in his individual and official capacity*

**Defendant**

**Jeanie Burk**
*KDOC Health Services Administrator @*

*Lansing Correctional Facility, contracted through Centurion Health Services, in her individual and official capacity*

**Interested Party**

| | | |
|---|---|---|
| **Kansas Department of Corrections** | represented by | **Natasha M. Carter** |

Kansas Department of Corrections
714 SW Jackson Street, Suite 300
Topeka, KS 66603
785−506−7615
Alternative Phone:
Cell Phone:
Email: natasha.carter@ks.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 26074*
*Bar Status: Active*

**Victoria Lane Toothaker**
Kansas Department of Corrections
714 SW Jackson Street, Suite 300
Topeka, KS 66603
785−670−0019
Alternative Phone: 785−670−0019
Cell Phone:
Email: victoria.toothaker@ks.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Number: 29010*
*Bar Status: Active*

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Docket Text |
|---|---|---|
| 08/19/2024 | 1 | COMPLAINT filed by Plaintiff Kevin Tamar Davis. (Attachments: # 1 Exhibit List and Exhibits, # 2 Declaration of Kevin Tamar Davis, # 3 Proposed Summons, # 4 Proposed Order to Show Cause for Preliminary Injunction and Temporary Restraining Order, # 5 Request for Pro Bono Assistance, # 6 Declaration of Tiell Reynolds, # 7 Declaration of David Wood, # 8 Declaration of O'Dhalsim Weakees Scruggs) (smnd) (Entered: 08/19/2024) |
| 08/19/2024 | 2 | MEMORANDUM OF LAW IN SUPPORT of 1 Complaint by Plaintiff Kevin Tamar Davis. (Attachments: # 1 Exhibit List and Exhibit) (smnd) (Entered: 08/19/2024) |
| 08/19/2024 | 3 | Letter to Clerk of the Court from Plaintiff Kevin Tamar Davis re: 1 Complaint. (smnd) (Entered: 08/19/2024) |
| 08/19/2024 | 4 | CIVIL COVER SHEET re 1 Complaint by Plaintiff Kevin Tamar Davis. (smnd) (Entered: 08/19/2024) |
| 08/19/2024 | 5 | |

| | | DEMAND FOR TRIAL BY JURY by Plaintiff Kevin Tamar Davis. (smnd) (Entered: 08/19/2024) |
|---|---|---|
| 08/19/2024 | 6 | NOTICE to File Suit by Plaintiff Kevin Tamar Davis. (smnd) (Entered: 08/19/2024) |
| 08/19/2024 | 7 | MOTION for Leave to Proceed in forma pauperis by Plaintiff Kevin Tamar Davis. NOTE – Access to document is restricted pursuant to the courts privacy policy. (Attachments: # 1 Inmate Account Statement, # 2 Letter to Plaintiff Davis from Butler & Associates) (smnd) (Entered: 08/19/2024) |
| 08/19/2024 | 8 | MOTION to Appoint Counsel by Plaintiff Kevin Tamar Davis. (smnd) (Entered: 08/19/2024) |
| 08/19/2024 | 9 | DECLARATION IN SUPPORT of 7 MOTION for Leave to Proceed in forma pauperis by Plaintiff Kevin Tamar Davis. (smnd) (Entered: 08/19/2024) |
| 08/27/2024 | 10 | EXHIBITS IN SUPPORT of 1 Complaint by Plaintiff Kevin Tamar Davis. (smnd) (Entered: 08/28/2024) |
| 08/28/2024 | 11 | ORDER ENTERED: Plaintiff's motion to proceed in forma pauperis 7 is granted. The Court assesses an initial partial filing fee of $38.50, calculated under 28 U.S.C. § 1915(b)(1). Plaintiff is granted to and including September 11, 2024, to submit the fee. Any objection to this order must be filed on or before the date payment is due. The failure to pay the fee as directed may result in the dismissal of this matter without further notice. Plaintiff remains obligated to pay the remainder of the $350.00 filing fee. The agency having custody of plaintiff shall forward payments from plaintiff's account in installments calculated under 28 U.S.C. § 1915(b)(2). The clerk is to transmit a copy of this order to plaintiff, to the finance office at the institution where plaintiff is currently confined, and to the court's finance office. Entered by District Judge John W. Lungstrum on 08/28/24. Mailed to pro se party Kevin Tamar Davis by regular mail. (This is a TEXT ENTRY ONLY. There is no.pdf document associated with this entry.) (smnd) (Entered: 08/28/2024) |
| 09/04/2024 | 12 | MOTION for Extension of Time to Pay Initial Partial Filing Fee by Plaintiff Kevin Tamar Davis. (smnd) (Entered: 09/05/2024) |
| 09/20/2024 | | INITIAL PARTIAL FILING FEE PAID: in the amount of $38.50, receipt number 500001762. (nac) (Entered: 09/20/2024) |
| 09/27/2024 | 13 | MOTION for Immediate Help by Plaintiff Kevin Tamar Davis. (smnd) (Entered: 09/27/2024) |
| 09/27/2024 | 14 | MEMORANDUM AND ORDER ENTERED: Plaintiff's Motion for Appointment of Counsel (Doc. 8 ) is denied without prejudice. Plaintiff's Motion for Extension of Time (Doc. 12 ) is denied as moot. Plaintiff's Motion for Immediate Help (Doc. 13 ) is denied without prejudice. Plaintiff is granted until October 28, 2024, in which to show good cause, in writing to the undersigned, why Plaintiff's claims in Count III should not be dismissed for failure to state a claim. Failure to respond by the deadline may result in dismissal of the claims in Count III without further notice for failure to state a claim. The Court will enter a separate e–service order directing the Clerk of Court to serve Defendants Howes, Cannon, and Burk. The Kansas Department of Corrections ("KDOC") shall submit the Martinez Report within thirty (30) days following the electronic filing of the Waiver of Service Executed. Upon the filing of that Report, the Court will screen Plaintiff's Complaint. If the Complaint survives screening, the Court will enter a separate order setting an answer deadline. Therefore, any answer deadline |

| | | provided in the docket entry for the waiver of service is not controlling. The Clerk of Court shall enter the KDOC as an interested party on the docket for the limited purpose of preparing the Martinez Report. Signed by District Judge John W. Lungstrum on 09/27/24. Mailed to pro se party Kevin Tamar Davis and Defendants by regular mail; electronic notification to counsel for the Kansas Department of Corrections and Attorney General for the State of Kansas. (smnd) (Entered: 09/27/2024) |
|---|---|---|
| 09/27/2024 | 15 | SERVICE ORDER ENTERED: The Clerk of the Court shall notify the Kansas Attorney General ("AG") and the KDOC of this Service Order. The Court requests that Defendants Jesse Howes, Fred Cannon, and Jeanie Burk, waive formal service of process. The AG and/or the KDOC shall have thirty (30) days from entry of this Service Order to file a Waiver of Service Executed and/or a Waiver of Service Unexecuted. Upon the electronic filing of the Waiver of Service Executed, the KDOC shall have thirty (30) days to prepare a report pursuant to Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978). Upon the filing of that report, the Court will screen Plaintiff's Complaint and will enter an order setting an answer deadline if the Complaint survives screening. Any answer deadline set forth in the docket entry for the waiver of service is not controlling. In those cases where a Waiver of Service Unexecuted is filed, the KDOC shall have ten (10) days from the filing of the Waiver of Service Unexecuted, to supply the Clerk of Court with the last known forwarding addresses for former employees, said addresses to be placed under seal and used only for the purpose of attempting to effect service of process. The KDOC shall use the event "SEALED Notice of Last Known Addresses of KDOC Employees" to submit the sealed addresses to the Court. Signed by District Judge John W. Lungstrum on 09/27/24. Mailed to pro se party Kevin Tamar Davis by regular mail; electronic notification to counsel for the Kansas Department of Corrections and Attorney General for the State of Kansas. (smnd) (Entered: 09/27/2024) |
| 10/07/2024 | 16 | MOTION for Leave to Amend Complaint re 1 Complaint by Plaintiff Kevin Tamar Davis. (Attachments: # 1 Exhibit List and Exhibits) (smnd) (Entered: 10/07/2024) |
| 10/07/2024 | 17 | RESPONSE (see Doc. 16 ) by Plaintiff Kevin Tamar Davis re 14 Memorandum and Order. (This is a TEXT ENTRY ONLY. There is no PDF document associated with this entry.) (smnd) (Entered: 10/07/2024) |
| 10/23/2024 | 18 | MEMORANDUM AND ORDER ENTERED: Plaintiff's Motion for Leave to Amend Complaint (Doc. 16 ) is denied. Plaintiff's claims in Count III are dismissed for failure to state a claim. Defendant James Skidmore is dismissed from this action. Signed by District Judge John W. Lungstrum on 10/23/2024. Mailed to pro se party Kevin Tamar Davis by regular mail. (jal) (Entered: 10/23/2024) |
| 10/28/2024 | 19 | WAIVER OF SERVICE Returned Executed – Prisoner Case by Jesse Howes. Jesse Howes waiver sent on 10/28/2024, answer due 12/27/2024. (Shoger, Matthew) (Entered: 10/28/2024) |
| 11/27/2024 | 20 | MARTINEZ REPORT by Interested Party Kansas Department of Corrections re 1 Complaint,. (Attachments: # 1 Exhibit – Redacted 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit – Redacted 6) (Toothaker, Victoria) Modified to seal Exhibit 2 at the direction of chambers on 4/11/2025. (smnd) (Entered: 11/27/2024) |
| 11/27/2024 | 21 | DISREGARD FILING AS INCORRECT PDF DOCUMENT ATTACHED –– PROVISIONALLY SEALED MARTINEZ REPORT EXHIBIT(S) *Exhibit 2* re 20 |

| | | Martinez Report by Interested Party Kansas Department of Corrections. (Toothaker, Victoria) Modified text to disregard filing on 12/2/2024. (smnd) (Entered: 11/27/2024) |
|---|---|---|
| 12/02/2024 | 22 | MOTION to Seal or Redact Document(s) 21 PROVISIONALLY SEALED Martinez Report Exhibits *Exhibit 2* by Interested Party Kansas Department of Corrections (Toothaker, Victoria) (Entered: 12/02/2024) |
| 12/02/2024 | 23 | SEALED MARTINEZ REPORT EXHIBIT 2 re 20 Martinez Report. (Toothaker, Victoria) Modified on 12/2/2024 to remove the provisional designation pursuant to 24 Order. (smnd) (Entered: 12/02/2024) |
| 12/02/2024 | 24 | ORDER ENTERED: The KDOC's Motion to File Exhibit to the Martinez Report Under Seal (Doc. 22 ) is granted. Exhibit 2, provisionally sealed at Doc. 23 , shall remain under seal. The Clerk is directed to remove the provisional designation from Doc. 23 . Signed by District Judge John W. Lungstrum on 12/02/24. Mailed to pro se party Kevin Tamar Davis by regular mail. (smnd) (Entered: 12/02/2024) |
| 12/04/2024 | 25 | RESPONSE to 20 Martinez Report by Plaintiff Kevin Tamar Davis. (smnd) (Entered: 12/04/2024) |
| 12/09/2024 | 26 | OBJECTION to 20 Martinez Report by Plaintiff Kevin Tamar Davis. (Attachments: # 1 Exhibit List, # 2 Exhibit 1, # 3 Exhibit 2, # 4 Exhibit 3) (smnd) (Entered: 12/09/2024) |
| 01/03/2025 | 27 | ORDER ENTERED: The KDOC shall have until February 18, 2025, in which to either supplement the Report or to indicate why the requested affidavits are either unavailable or irrelevant. Signed by District Judge John W. Lungstrum on 01/03/25. Mailed to pro se party Kevin Tamar Davis by regular mail. (smnd) (Entered: 01/03/2025) |
| 02/07/2025 | 28 | RESPONSE to 27 Order by Interested Party Kansas Department of Corrections. (Toothaker, Victoria) (Entered: 02/07/2025) |
| 02/13/2025 | 29 | REPLY (titled Plaintiff's Response With Objection Toward Defendant's Response to the Court Order) to 28 Reply to Response to Order by Plaintiff Kevin Tamar Davis. (smnd) (Entered: 02/13/2025) |
| 03/03/2025 | 30 | Letter to the Clerk of Court re: 23 Sealed Martinez Report Exhibit 2 from Plaintiff Kevin Tamar Davis. (smnd) (Entered: 03/03/2025) |
| 04/15/2025 | 31 | MEMORANDUM AND ORDER ENTERED: Plaintiff is granted until May 16, 2025, in which to respond to the Report at Doc. 20 , and to show good cause, in writing to the undersigned, why Plaintiff's claims should not be dismissed. Signed by District Judge John W. Lungstrum on 04/15/25. Mailed to pro se party Kevin Tamar Davis by regular mail. (smnd) (Entered: 04/15/2025) |
| 04/28/2025 | 32 | RESPONSE (missing pages 2–3 and 5–9) by Plaintiff Kevin Tamar Davis re 31 Memorandum and Order. (Attachments: # 1 Exhibits 1–3) (smnd) (Entered: 04/28/2025) |
| 05/01/2025 | 33 | SUPPLEMENTAL RESPONSE by Plaintiff Kevin Tamar Davis re 31 Memorandum and Order. (Attachments: # 1 Exhibits 1–3, # 2 Letter to Clerk of the Court) (smnd) (Entered: 05/01/2025) |
| 05/09/2025 | 34 | RESPONSE (Complete Document) by Plaintiff Kevin Tamar Davis re 31 Memorandum & Order. (Attachments: # 1 Exhibits 1–3) (jal) (Entered: 05/09/2025) |

| 06/04/2025 | 35 | MEMORANDUM AND ORDER ENTERED: This matter is dismissed for failure to state a claim. Signed by District Judge John W. Lungstrum on 6/4/2025. Mailed to pro se party Kevin Tamar Davis by regular mail. (jal) (Entered: 06/04/2025) |
| 06/04/2025 | 36 | JUDGMENT ENTERED: re 18 Memorandum and Order (dismissing Count III and Defendant James Skidmore) and 35 Memorandum and Order dismissing this matter. Signed by deputy clerk on 6/4/2025. Mailed to pro se party Kevin Tamar Davis by regular mail. (jal) (Entered: 06/04/2025) |
| 06/11/2025 | 37 | MOTION to Alter or Amend Judgment by Plaintiff Kevin Tamar Davis. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2) (smnd) (Entered: 06/11/2025) |
| 06/11/2025 | 38 | NOTICE OF APPEAL as to 35 Memorandum and Order and 36 Judgment by Plaintiff Kevin Tamar Davis. (Attachments: # 1 Declaration of Kevin Tamar Davis) (smnd) (Entered: 06/11/2025) |
| 06/11/2025 | 39 | MOTION for Leave to Appeal in forma pauperis by Plaintiff Kevin Tamar Davis. NOTE – Access to document is restricted pursuant to the courts privacy policy. (Attachments: # 1 Inmate Account Statement) (smnd) (Entered: 06/11/2025) |
| 06/11/2025 | 40 | Letter Requesting Transfer of Record on Appeal to the 10th Circuit Court of Appeals by Plaintiff Kevin Tamar Davis. (smnd) (Entered: 06/11/2025) |

Kevin T. Davis, #0083253
Plaintiff, *Sui Juris*
LCFC B2-208
P.O. Box 2
Lansing, Ks 66043
daviskevin948@yahoo.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**KEVIN TAMAR DAVIS,**
            **Plaintiff,**


v.                                              **PLAINTIFF'S- FROM OF NOTICE OF APPEAL
                                         AS TO PLAINTIFF'S CIVIL RIGHTS
                                         COMPLAINT IN THE CASE AT BAR ON 1983'**

                                         **Civil Action No.: 5:24-cv-03143-JWL**

**Jesse Howes, Chief Warden et al,**
            **Defendant(s).**


Notice is hereby given that Plaintiff, Kevin Tamar Davis, # 0083253 above named to the United

States Court of Appeals for the 10th Circuit from the judgment in the case at bar on 1983' from the

Memorandum and Order of the U.S. District Court for the District of Kansas entered in this action on

June 4th, 2025, @ 9:32a.

WHEREFORE, this U.S. District Court have the option to consider an appropriate order in

accepting said Notice of Appeal to the United States Court of Appeals for the 10th Circuit.

**DATE: 6/11/2025**


                                         Respectfully submitted,

                                         Kevin T. Davis, #0083253
                                         Plaintiff, *Sui Juris*
                                         LCFC B2-208
                                         P.O. Box 2
                                         Lansing, Ks 66043
                                         daviskevin948@yahoo.com


                        1 of 2

## CERTIFICATE OF SERVICE

I undersigned hereby certifies that service of the above and foregoing FROM OF NOTICE OF APPEAL AS TO PLAINTIFF'S CIVIL RIGHTS COMPLAINT IN THE CASE AT BAR ON 1983' by Sui Juris Plaintiff Kevin T. Davis, # 0083253 was E-filed on this 11th day of June, 2025, to:

> Clerk, U.S. District Court for the District of Kansas
> 444 S.E. Quincy, Rm 490
> Topeka, Ks 66683
> PH: 785.338.5400
> E-mail: ksd_clerks_topeka@ksd.uscourts.gov

Copies was also served of the above and foregoing FROM OF NOTICE OF APPEAL AS TO PLAINTIFF'S CIVIL RIGHTS COMPLAINT IN THE CASE AT BAR ON 1983' by Sui Juris Plaintiff Kevin T. Davis, # 0083253 was mailed U.S. Postal pre-paid on this 11th day of June, 2025, to:

Victoria L. Toothaker | Att'y
KDOC
714 SW Jackson, Ste. 300
Topeka, Ks 66603
PH: 785.670.0019
Email: Victoria.Toothaker@ks.gov

Deana Johnson
General Counsel | Centurion LLC
1447 Peachtree St., NE Ste., 500
Atlanta, GA 30309
PH: 703.749.4600
Email:

CC: Jesse Howes, Chief Warden; [5] Dr. Fred Cannon, Regional Dental Dir., and; Jeanie Burk, RN, BSN, HSA

Kevin T. Davis, #0083253
Plaintiff, *Sui Juris*
LCFC B2-208
P.O. Box 2
Lansing, Ks 66043

---

[5] Jesse Howes has resign as Chief Warden w/KDOC

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**KEVIN TAMAR DAVIS,**
          **Plaintiff,**

v.
                           **DECLARATION**
                           **OF KEVIN TAMAR DAVIS, #0083253**

                           **Civil Action No.: 5:24-cv-03143-JWL**

**Jesse Howes, Chief Warden et al,**

               **Defendant(s).**


**Kevin T. Davis, #0083253 declares:**

I have been incarcerated at Lansing Correction Facility since, 2021. I'm filing my Notice of Appeal et seq., under the Civil Rights Act, 42 U.S.C. § 1983, by E-file to not give this court any reason to claim that am time bared, or; so am invoking the prison mailbox rule in compliance w/ 28 U.S.C. § 1746.

I deposit with this Facility Official on this 11th day of June, 2025, wherewith E-filing the following pleadings et seq.

I declare under penalty of perjury that the foregoing is true and correct. Executed at Lansing Correctional Facility on this 11th day of June, 2025.


Kevin T. Davis, # 0083253

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KEVIN TAMAR DAVIS,

     Plaintiff,

     v.                           CASE NO. 24-3143-JWL

JESSE HOWES, et al.,

     Defendants.

<u>**MEMORANDUM AND ORDER**</u>

Plaintiff, Kevin Tamar Davis, who is currently incarcerated at the Lansing Correctional Facility in Lansing, Kansas ("LCF"), brings this pro se civil rights case under 42 U.S.C. § 1983. The Court granted Plaintiff leave to proceed in forma pauperis.  On September 27, 2024, the Court entered a Memorandum and Order (Doc. 14) ("M&O") finding that the proper processing of Plaintiff's claims in Counts I and II could not be achieved without additional information from appropriate Kansas Department of Corrections ("KDOC") officials.  Accordingly, the Court ordered KDOC officials to prepare and file a *Martinez* Report for the claims in Counts I and II. The Court also directed Plaintiff to show good cause why his claims in Count III should not be dismissed.  Plaintiff's claims in Count III were subsequently dismissed.  (Doc. 18.)

The Court's M&O provides that "[o]nce the Report has been received, the Court can properly screen Plaintiff's Complaint under 28 U.S.C. § 1915A."  (Doc. 14, at 10.) The *Martinez* Report (Doc. 20) (the "Report") was filed, and Plaintiff filed a response (Doc. 25) and an objection to the Report (Doc. 26).  On April 15, 2025, the Court entered a Memorandum and Order (Doc. 31) ("M&O II"), granting Plaintiff until May 16, 2025, in which to respond to the Report and to show good cause why his claims should not be dismissed for the reasons set forth

1

in the M&O II.  This matter is before the Court on Plaintiff's response (Doc. 34).[1]

Plaintiff's allegations are set forth in detail in the Court's M&O.  The findings from the Report are set forth in detail in the Court's M&O II.  In summary, Plaintiff alleges in Count I that Defendants Howe and Cannon acted with deliberate indifference to his serious medical needs regarding his need for dental surgery.  Plaintiff alleges that he is being denied dental surgery recommended by Dr. Card.  Plaintiff alleges that he was told that Dr. Cannon, KDOC's Regional Dental director at LCF, denied Dr. Card's referral because there was no dental specialist contracted with the KDOC to perform the bifurcated surgery, and instead Dr. Cannon recommended extraction of two (good) front teeth with replacement via partial dentures.

As Count II, Plaintiff alleges that Defendant Burke was deliberately indifferent to Plaintiff's need for medical equipment and a medical appliance.  Plaintiff alleges that despite Dr. Mariah Kalma's finding that Plaintiff should continue to be approved for both medical shoes and the wrist brace/splint, HSA Jeanie Burk denied Dr. Kalma's request for the splint and shoes, informing Plaintiff that he could not receive the medical shoes because he did not have diabetes.

Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs regarding the denial of necessary dental surgery,[2] and the denial of Plaintiff's hand splint and the denial—because he is not diabetic—of his medical shoes.[3]  (Doc. 1, at 5–8.)

---

[1]  Plaintiff submitted a response with missing pages at Doc. 32.  Plaintiff resubmitted the response with the missing pages included at Doc. 33, and again at Doc. 34.

[2]  The November 14, 2023 response from LCF's Medical Department states that Plaintiff had:

> 20 dental encounters since 1/1/23, including visits with Dr. Cannon.  Dental has discussed the previous failed apical surgery which has led to the cyst and chronic infection he is currently complaining of.  Mr. Davis has been sent off-site to oral surgery per his request.  Dental recommendations have consistently been extraction of teeth 9 and 10, with replacement via partial dentures.  Mr. Davis has declined the treatment plan and requested time to consider this option.  Extraction is the recommendation by Dr. Cannon per his notes.

(Doc. 1–1, at 19.)

[3]  The March 14, 2024 grievance response indicates that Plaintiff was examined and the findings did not support his request for a wrist brace and medical shoes.  *See* Doc. 1–1, at 57.

The Court found in the M&O II that Plaintiff failed to show that any defendant was deliberately indifferent regarding his medical or dental care. Plaintiff was seen by George Harper, DDS, on October 26, 2023. (Doc. 23, at 4–5, sealed). The exam type is noted as "Treatment" and "Triage exam," and the assessment notes state that:

> Patient concerned about front teeth that had root canals. He previously had 2 apical surgeries in this area. Swelling is present at the apices of teeth 9 and 10 with chronic infection. Patient wants to have apical surgery redone. Patient does not want teeth out. I am recommending that teeth 9 and 10 be removed.

*Id*. at 4. The noted plan was for extraction of teeth 9 and 10. *Id*. at 4–5. Treatment performed at the visit included ultrasonic scaling followed by hand instrumentation, polish, and OHI-flossing. *Id*. at 5.

Plaintiff had a nurse visit on November 19, 2023, where he complained of pain due to the cyst in his mouth. *Id*. at 14. The nurse's notes reflect that he will be placed on dental sick call. *Id*. at 15. Plaintiff had a dental examination on November 21, 2023, with Paul Overman, DDS. *Id*. at 17–18. Pano x-rays were taken, and the assessment notes indicate that in comparing the bone loss above #9 and #10, "not much change, if any has happened. Pt. reports the bump above the teeth is getting bigger." *Id*. at 17. The treatment notes provide that "Pt. was scheduled to see Dr. Smith, but he advised that he was waiting for information from Dr. Cannon prior to exam and/or treatment. No treatment or medications at this appointment." *Id*. at 18.

Plaintiff had another dental examination scheduled for December 7, 2023, with David Smith, DDS. *Id*. at 22. The examination had to be rescheduled due to a lockdown. *Id*. Plaintiff had a visit with Rachel Crowell, DA, on January 10, 2024. *Id*. at 28. Plaintiff requested to be rescheduled for his dental examination that was cancelled, and the notes indicate that he was rescheduled. *Id*. Plaintiff met with Rachel Crowell, DA, again on January 17, 2024, requesting

the rescheduled dental visit and was advised that it had been rescheduled and that he should "watch call outs." *Id*. at 30. Plaintiff had a dental examination with Paul Overman, DDS, on January 23, 2024. *Id*. at 32–33. The treatment notes from the visit state that:

> Pt issued Acetaminophen in clinic & I authorized cephalexin at this time. I advised pt I will pass along information to Dr. Cannon. I advised pt. it may not be possible to have him transferred to a different facility for dental treatment. I advised pt. I have no control concerning these decisions. I stressed to pt. that Dr. Card may also advised him that teeth could be extracted & "cysts" removed & area would heal. I advised pt. that teeth that have had endo tx can still fail over time. pt. wanting information passed on to Dr. Cannon so he can be sent out to have 2nd surgery in area. See entry on 7-27-023. I called Dr. Cannon & advised me that can be done is extraction of #9 & 10, possibly by local oral surgeon Pt. was called back to clinic to have him sign a refusal for extraction of #9 & #10 at this time.

*Id*. (errors in original); *see also id*. at 72 (signed refusal of treatment). Treatment notes entered later that day indicated that a "[p]ano was taken during appointment today." *Id*. at 35.

Plaintiff's medical records show that he failed to come to a dental sick call scheduled for February 12, 2024, with David Smith, DDS. *Id*. at 112. Plaintiff had a dental examination on February 22, 2024, with George Harper, DDS. *Id*. at 114–15. The treatment notes indicate that Plaintiff "has failing endodontic treatment on teeth 9 and 10. Patient has received antibiotic over 5 times for this area and has just finished Cephalexin . . .." *Id*. at 114. The assessment states that:

> I addressed this problem with patient on 10/26/24[4] stating that the teeth need to be removed. Patient adamant that he will get an apicoectomy, however this treatment was denied. I informed the patient, DON, and HSA that I will not prescribe antibiotics for the 6th time for this infection. I informed patient that this situation puts his health at risk and he needs to address the infection by removing the teeth. If he thinks he can get an apicoectomy, he needs to work with the proper channels.

---

[4] It appears that the reference is to the appointment on October 26, 2023.

*Id*.  The treatment notes provide: "I've informed the DON and the HSA of the patient's condition and to expect contact from him. I've stress[ed] the importance of removing the infection (by removing the teeth) and that he cannot continue to be on antibiotics every other month."  *Id*. at 115.

Plaintiff had another dental examination on March 5, 2024, with Paul Overman, DDS. *Id*. at 116–18.  Plaintiff reported swelling above teeth 9 and 10, and sought Keflex to bring the swelling and pain down.  *Id*. at 116.  The assessment states that "Teeth need to be extracted."  *Id*. The treatment notes state that:

> I again advised pt. that taking antibiotics over & over does not solve the problem--treats the symptom. I advised pt he needs to get the teeth extracted. I stressed to pt. that going through different antibiotics because last one stopped working can get to where only antibiotics are not available will work. I stressed to pt. that antibiotics don [sic]
> I stressed to pt. again that taking antibiotics treats the infection--does not get rid of the cause, and infection will return. Switching antibiotics when one stops working will narrow the field of available antibiotics when needed. Oral antibiotics don't affect area where there is infection--in [sic] affects other needed bacteria--especially the GI tract. It is possible to get a bad GI infection from staying on ab too long & a different ab appears & spread where even more major problems occur. I advised pt. to take antibiotics only when needed & get rid of problem that is causing the infection. Pt. wants to get rid of swelling/pain at this time. I authorized Cephalexin & acetaminophen at this time.

*Id*. at 116–17.

Plaintiff had another dental examination with Paul Overman, DDs, on August 21, 2024, due to his request for teeth cleaning.  *Id*. at 148–49.  The medical records reflect hat Plaintiff wanted his teeth cleaned and reported that tooth #11 felt sharp and asked if it could be smoothed and shaped at the appointment.  *Id*. at 148.  The treatment notes states that:

> FM scaled with hand & ultrasonic scalers. I used high speed hand

> piece & diamond but to reduce sharp pointed edge on #11, shaping
> more like #6, but keeping change/reduction to a minimum. Teeth
> were polished with prophy paste. Pt. needs to be rescheduled for x-
> rays & check tooth #3--charted as having mesial decay. OHI.

*Id.*

This Court has held that "[a]t least one panel of the Tenth Circuit has held that an extraction-only policy *may* be constitutionally deficient *under certain circumstances*." *Dudley v. KDOC*, 2023 WL 3686566, at *2 (D. Kan. 2023) (emphasis added) (citing *see Stack v. McCotter*, F. App'x 383, 390 (10th Cir. 2003) (unpublished)). In the instant case, nothing suggests that there is an extraction-only policy. The Report shows that Plaintiff was denied his preferred root canals due to dentists' recommendations, not based on an extraction-only policy. KDOC IMPP 16-102D explicitly provides that oral treatment is *not* limited to extractions. Nothing suggests that Plaintiff was denied a root canal for financial reasons or pursuant to some unwritten extraction-only policy. "As part of its contract, Centurion is required to comply with KDOC's [IMPPs] including IMPP 16-102D, Oral Health Care Services." (Doc. 20–5, at ¶ 9, affidavit of Warden Jesse Howes.)

Even if there is an extraction-only policy, the question would be whether the policy violated a plaintiff's Eighth Amendment rights. *See Amaro v. New Mexico Corrs. Dep't*, 2022 WL 796358, at *6 (D. N.M. 2022) ("The Court is not obligated to determine in the abstract whether an extraction-only policy is constitutionally impermissible. The question here is whether Mr. Amaro has alleged enough facts to show that the extraction-only policy violated his Eighth Amendment rights in this case."), *adopting report and recommendation* 2022 WL 1090601 (D. N.M. 2022). In the M&O II, the Court cited multiple cases finding no Eighth Amendment violation under circumstances similar to this case. *See* Doc. 31, at 12–15.

Plaintiff was examined by more than one dentist[5] that recommended extractions. Dr. Cannon submitted an affidavit that provides that Plaintiff's "medical history was reviewed, and it was noted in his chart that [teeth #9 and #10] were already shortened due to previous apicoectomies (endodontic treatment), that were done before [Plaintiff] was incarcerated and which failed to prevent infection from recurring." (Doc. 20–3, at ¶ 7.) Plaintiff was informed that the two teeth "held a chronic apical cyst due to reinfection of the canal space and periapical tissues," and "additional endodontic treatments such as an apicoectomy or retreatment of root canals could not be completed as tooth #9 may have a fractured root that is causing the abscess and is therefore a non-restorable tooth." *Id*. at ¶¶ 9, 10. Plaintiff was advised that extraction was the ideal treatment "to avoid reinfection." *Id*. at ¶ 11. After Plaintiff was allowed to have an offsite evaluation by an oral surgeon—Dr. Card—the evaluation was discussed with Dr. Cannon and Dr. Cannon has declared that Dr. Card also recommended extraction of the teeth. *Id*. at ¶ 13.

The medical records also reflect that Plaintiff had multiple nurse and doctor visits regarding other medical issues, including his hand/wrist, feet, and thumb. Plaintiff was prescribed medication and had offsite visits, including with KU neurology. Jeanie Burk was the Health Service Administrator with Centurion from November 2022 to April 2024. (Doc. 20–4, at ¶ 6.) She declares in her affidavit that prior to her leaving her position in April 2024, Plaintiff was denied medical appliances because the medical provider's medical examination of both his feet and his wrist indicated no functional deficits, and therefore he did not possess a need for such medical devices. *Id*. at ¶ 12. Also, on June 28, 2024, Plaintiff signed a "Receipt of Medical Equipment/Appliance Form" noting his receipt of "1 pr Life Walker shoes." *Id*. at 152. On July 18, 2024, Plaintiff signed another "Receipt of Medical Equipment/Appliance Form." *Id*. at

---

[5] At a dental examination on October 26, 2023, George Harper, DDS, recommended extractions, and at a dental examination on March 5, 2024, Paul Overman, DDS, stated that the teeth need to be extracted.

151.  The receipt shows that Plaintiff received Life Walker Strap Shoes.  *Id*.

The Court ordered Plaintiff to show good cause why his Eighth Amendment claims should not be dismissed for failure to state a claim.  In his response, Plaintiff argues that neither Dr. Cannon nor Dr. Card are qualified experts in Endodontics.  (Doc. 34, at 4.)  Plaintiff also argues that Dr. Cannon incorrectly referred Plaintiff to a specialist in Human Maxillary, and then Dr. Card "picked up on this incorrect referral," and referred Plaintiff to a qualified expert in endodontics.  *Id*.  Plaintiff argues that the Court should not accept Dr. Cannon's opinion without the opinion of an endodontics specialist.  *Id*.  Plaintiff argues that "endodontics could have update [sic] technology procedures when it comes to chronic apical cyst to avoid analog ideal treatment wherewith two cent opinion from non-qualified expert that practice therein the dentistry field."  *Id*. at 8.

Plaintiff takes issue with the finding that he had been provided with Life Walker shoes and he was doing better to the extent that he was able to play basketball.  Plaintiff responds "yeah doing much better after defendant's deliberate unreasonable delay/unnecessary and wanton infliction of pain . . . of providing medical shoes a year later. LOL!!!"  *Id*. at Doc. 34, n.4.  Plaintiff also states that he did not receive a hand splint at his KU Medical Center visit because they were not allowed to provide a prisoner with any medical equipment or appliance unless approved by Centurion.  *Id*.  at 6.  Plaintiff alleges that it took another director—HAS Angel Sutton—to come in and get with Dr. Melissa Hildebrandt to see that Plaintiff had an ongoing hand/feet deficit and therefore needed the medical devices.  *Id*. at 9.

Plaintiff has failed to show good cause why his claims should not be dismissed for the reasons set forth in the Court's M&O II.  A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel

8

and unusual punishment.  *See Estelle*, <u>429 U.S. at 106</u>–07; *see also Coppinger v. Townsend*, <u>398 F.2d 392, 394</u> (10th Cir. 1968) (prisoner's right is to medical care—not to type or scope of medical care he desires and difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983).

In *Davis v. Collins*, the plaintiff was similarly diagnosed with a failed root canal, and it was recommended that the tooth be extracted because it was non-restorable.  *Davis v. Collins*, <u>230 F. App'x 172, 173</u> (3rd Cir. 2007).  Although an oral surgeon gave a second opinion and recommended that an apicoectomy be performed, the Utilization Review Committee denied the apicoectomy and the tooth was extracted  *Id*.  The plaintiff alleged that the failure to perform the apicoectomy constituted deliberate indifference.  *Id*.  The Third Circuit affirmed the dismissal, finding that "the decision not to perform the apicoectomy only constituted a medical disagreement regarding Davis' dental treatment" and "this is insufficient to establish a constitutional claim."  *Id*. at 174.

A similar conclusion was reached in *Davis v. Norris*, where one examining dentist had recommended a root canal, and another had recommended extraction.  *Davis v. Norris*, <u>1999 WL 1006437</u>, at *1 (8th Cir. 1999). The plaintiff claimed that the defendants showed deliberate indifference to his serious dental needs by denying him a root canal.  *Id*.  The Eighth Circuit held that "the record shows only a disagreement over a particular type of dental procedure."  *Id*. (citations omitted).

In *Leachman v. Harris Cty., Texas*, the Fifth Circuit found that the court has "concluded a prisoner failed to state a claim under the Eighth Amendment based on the jail's provision of 'extraction of his injured teeth' rather than 'more expensive restorative treatment.'"  *Leachman v. Harris Cty., Texas*, <u>779 F. App'x 234, 238</u> (5th Cir. 2019) (citation omitted).  The court also

noted that "our sister circuits have found that similar disputes about a course of dental treatment do not state an Eighth Amendment violation."  *Id.* (citing *Mathews v. Raemisch*, <u>513 F. App'x 605, 607</u> (7th Cir. 2013) (extraction instead of a root canal does not amount to deliberate indifference to a serious medical need); *James v. Penn. Dep't of Corr.*, <u>230 F. App'x 195, 197</u> (3d Cir. 2007) (per curiam) (extraction of an abscessed tooth was not an Eighth Amendment violation even where another possible treatment, a root canal, was not available pursuant to prison policy); *Willis v. Washington*, <u>172 F.3d 54</u> (7th Cir. 1999) (unpublished table decision) (no Eighth Amendment violation where prisoner alleged "he was told he either could live with the pain or have his teeth pulled" and argued "he should have been offered alternatives to extraction")); *see also Lamb v. Advanced Corr. Healthcare, Inc.*, No. 17-C-383, <u>2018 WL 3150227</u>, at *6 (E.D. Wis. June 27, 2018) ("As to a 'pull only,' or 'extraction only' policy, the majority rule appears to be that offering extraction in lieu of a root canal or other more expensive treatment for tooth decay does not violate the Eighth Amendment if extraction is medically appropriate and will resolve the issue." (quotation omitted)).

Plaintiff's preference for another root canal simply constitutes a disagreement with the recommended course of treatment.  Courts have found that this does not constitute deliberate indifference.  *See See Ciaprazi v. Jacobson*, <u>2016 WL 4619267</u>, at *4 (S.D.N.Y. 2016) ("But even if Ciaprazi's teeth could have been treated with root-canal therapy, it would not violate the Eighth Amendment for DOCCS to offer him only extraction. As noted by Dr. D'Silva, many states and localities have policies of offering extraction and not root canals."); *see also Mathews v. Raemisch,* <u>513 F. App'x 605, 606-07</u> (7th Cir. 2013) (affirming summary judgment on inmate's claim of deliberate indifference to his infected tooth where the prison refused to provide him with a root canal procedure but did offer extraction because the "dispute is over nothing but

the choice of one routine medical procedure versus another"). Plaintiff has failed to show that any defendant was deliberately indifferent regarding his dental or medical care.

**IT IS THEREFORE ORDERED BY THE COURT** that this matter is **dismissed** for failure to state a claim.

**IT IS SO ORDERED**.

**Dated June 4, 2025, in Kansas City, Kansas.**

<u>S/ John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**

11

# UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

**Kevin Tamar Davis,**

                    **Plaintiff,**

  **v.**                                                    **Case No. 24-3143-JWL**

**Jesse Howes, James Skidmore, Fred
Cannon, Jeanie Burk**

                    **Defendants.**

## JUDGMENT IN A CIVIL CASE

**(  )**     **JURY VERDICT.**  This action came before the Court for a trial by jury.  The issues
        have been tried and the jury has rendered its verdict.

**(x)**     **DECISION BY THE COURT.**  This action came before the Court.  The issues have
        been considered and a decision has been rendered.


**IT IS ORDERED AND ADJUDGED** that pursuant to the Memorandum and Order filed on
10/23/2024 dismissing Count III and defendant James Skidmore from this action, and
pursuant to the Memorandum and Order filed 6/4/2025, this matter is dismissed for failure
to state a claim.

Entered on the docket 6/4/2025

 **Dated:  June 4, 2025**                    **SKYLER B. O'HARA**
                                        **CLERK OF THE DISTRICT COURT**



                                        **s/J. Lolley**
                                        **Deputy Clerk**

Kevin T. Davis, #0083253
Plaintiff, *Sui Juris*
LCFC B2-208
P.O. Box 2
Lansing, Ks 66043
daviskevin948@yahoo.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**KEVIN TAMAR DAVIS,**
        **Plaintiff,**

                                        **MOTION TO ALTER OR AMEND THE**
                                        **JUDGMENT UNDER Fed. R. Civ. Pro 59(e)**
**v.**                                  **Civil Action No.:5:24-cv-03143**

**Jesse Howes, Chief Warden et al,**
        **Defendant(s).**

        **Defendant(s).**

        Pursuant to Fed. R. Civ. Pro 59(e) plaintiff Davis moves this U.S. District Court for an order to

alter or amend the judgment under Rule 59(e); Said motion is being filed within 28 days after the entry of

judgment from this U.S. District Court dated, 6/4/2025. In support of this motion, plaintiff Davis states:

1.        Here Davis would argue w/teeth to this U.S. District Court which might otherwise escape its

attention to allow a proper decision for which it continue to do, i.e., Davis had not only stated a claim

toward claims I and II Davis also drafted every pleading lucid to prevent any and all misapprehended

facts, plaintiff's' position, and cited law for which this U.S. District Court ruled contrary to.

2.        This U.S. District Court (Dist. Judge J.W. Lungstrum) has committed *Sui Juris* suppression

thereby hating upon Davis' Sui Juris approach of litigating. Davis' last response w/ (3) exhibits showed

fully that Davis Claims for I and II had been stated, and Dist. Judge J.W. Lungstrum saw this yet took

upon the form of a theophany, e.g., a *Sui Juris* Suppresser.

3.        Under *State Farm Fire & Gas. Co*., 845 F.3d 997 at 1004 (10th Cir. 2017) [plaintiff] *here will*

*therefore* question [] the correctness of the underlying judgment relief under Rule 59 (e) subsence number

(2),i.e., [when] new evidence previously [was] unavailable, e.g., inasmuch as **Claim II** is a concern a day

1 of 6

(June 6/04/2025) thereinafter this U.S. District Court unreasonable ruling Davis received a **Abducted Thumb Spica, Univ**, for his paralysis left hand **(See Exhibit 1-2 attached hereto)**, form the same parties this U.S. District Court continue to aver that Davis "did not state a claim."

4.      Again there still exist an "unnecessary and wanton infliction of pain, &c.," toward Davis' serious medical needs. **1)** Let the record reflect that it took another director Angela Sutton, HAS to come in and get w/Dr. Melissa Hildebrandt to see that Davis truly had an ongoing hand/feet deficit and therefore he did in fact possessed a need for such medical devices. (Medical Records, pg. 87-90), likewise this newly evidence previously [was] unavailable (Abducted Thumb Spica, Univ) for Davis' paralysis left hand was administrated through and by Dr. Tomlins, and Dir. Joshua Murtaugh whom at all-time hold the rank and rights just as Ms. Jeanie Burk and found her **assessment finding** to be that of **inaccurate** (deliberate indifference) thereby finding that Davis did in fact possessed a need for such medical devices (Abducted Thumb Spica, Univ) Id.

5.      By Davis receiving any and all Medical Equipment/Appliance since he filed a 1983' shows very much that defendant Ms. Jeanie Burk action where of deliberate indifference, &c., for over **a year** "unnecessary and wanton infliction of pain, &c.," toward Davis' serious medical needs. (Slow medical attention), state a claim for violation of the 8th Amendment. *Kirby v. Blackledge*, 530 F.2d 583, May 6, 1975, Argued; January 19, 1976, Decided.

6.      Davis would reallege and incorporate by reference Arguments and Authorities for his second cause of action that stated a claim all the time thereof his Memorandum of law in Support pgs. 6-7.

7.      Now for **Claim I**, this deprivation of prison confinement has impose conditions of such onerous burdens as to be of constitutional dimensions upon Davis that this U.S. District Courts may intervene in prison management. Again, Dr. Cannon opinion wherewith his **purposely incorrect referral** Davis to a surgeon of the **wrong dentistry practice** has lead this U.S. District Court to be brought under a **cloud** of

disagreement between a physician and patient (Davis). <u>Why can't this U.S. District Court see this manipulation, &c?</u> [1]

8.    Davis stated a claim under <u>Derrickson v. Keve</u>, 390 F. Supp. 905 (D.Del. 1975) that showed Deliberate Indifferences toward Davis' serious dental needs for the violation of the 8th Amendment, e.g., due to the matter being one of life and death Dr. Cannon conceded w/Davis request of a reasonable degree of Endodontics dental certainty, for this was the **initial opinion creed**; Dr. Cannon saw that Davis dental condition had not been one that needed extraction for it would not solve Davis' lost outer bone walls and now due to **Slow medical attention**, <u>Derrickson v. Keve</u> , supra., the procedure now requires an **onlay block type bone graft** taken from Davis chin or the side of Davis jaw to correct or Davis would risk chances of death at any time given time. [2] (*failure to provide [Davis] with treatment is made significant by one overwhelming fact: [Davis] is serving [two] life sentence. This is not a case in which a prisoner seeks redress for an isolated instance of past negligence, or one in which he seeks treatment which he might elect to have performed when he is released from incarceration. So far as this Court can determine, a decision not to afford [Davis] an operation would mean that [Davi]'s condition would be made irreparable. The surgery, then, is not elective. Unless Defendants act, it is impossible*). Id. at 907.

9.    Failing to schedule surgery, Defendants have violated State Law. **IMPP 16-102D II L. (10/2023)** states :

> "**II    Screening, Examination, and Treatment** L. Referrals to dental specialists and   oral surgeons must be available as clinically indicated and when such treatment falls <u>outside of the scope or professional capability of the facility dentist</u> upon approval of the Regional Dental Director"

This Section has been implemented by regulations published in the Internal Management Policy & Procedure.

---

[1] Davis claim is that he's a **life-term prisoner** possessing a chronic condition causing pain, &c., which being denied referral of attention to visit w/a **correct** dentistry practice thereto form an opinion to a reasonable degree of **endodontics** dental certainty, and despite the **suspected** fact of opinion from other (non-endodontics) within the dentistry practice that less radical treatment would give some relief, where Dr. Cannon was made aware of his purposely incorrect referral, Dr. Cannon refused to correct his wrong, thereby limiting the surgery to emergency situations <u>Derrickson v. Keve</u>, 390 F. Supp. 905 (D.Del. 1975) showed a **nexus** of Deliberate Indifferences toward Davis' serious dental needs state a claim for the violation of the 8th Amendment.

[2] Davis is not requesting a **second** "apico" he's requesting the "apico" procedure of an onlay block type bone graft that is warrant due to slow medical attention and no fault of Davis.

**IMPP 16-102D II L.** explicitly provided unambiguous and Dr. Cannon's referred Davis outside to Dr. Card LOMS ORAL & MAXILIO FACIAL SERGERY of Leavenworth even though it had been the **incorrect** practice, it was clear & convincing evidence that treatment for Davis fail outside the scope or professional capability of the facility dentist and Davis should have been referred to an qualified expert Endodontics upon approval of Dr. Cannon the regional Dental director, and not a **Human Maxillary** practice which was done by defendants to manipulated Davis out of opinion and any operation to a reasonable degree of endodontics dental certainty.

10.    KDOC prepared *Martinez* Report is **inadequate** it omitted relevant facts as to approach a violation of the Eighth Amendment's through and by the form of Affidavit from the opinion of a qualified expert Endodontics inter alios, i.e., Dr. Kalma, APRN; Angela Sutton, Centurion new HAS; Mrs. Racheal, Dental Aid; and Dr. Melissa Hildebrandt. (Doc. 25).

11.    Davis would reallege and incorporate by reference Arguments and Authorities for his first cause of action that stated a claim all the time thereof his Memorandum of law in Support pgs. 2-6.

12.    Davis is not asking that you revisit his claims for this would be contrary to *Does*, 204 F. 3d 1005 (10th Cir. 2000), Davis is respectfully requesting that you remove your bias opinion because these reliefs are serious and Davis has two (2) life sentence and this U.S. Dist. Court BIAS ORDER has just made

things worse, e.g., caused Davis # PTSD to enhance too

# Aggravated

# PTSD ....

WHEREFORE, plaintiff request that this U.S. District Court take this motion under serious advisement due to Claim I **will** result in **death** at any hour and this is reflect in the record and beside the point Dist. Judge J.W. Lungstrum you are being in **omission** to this deliberate indifference w/defendants.

3

DATE: 6/11/2025


Kevin T. Davis, #0083253
*Sui Juris* Plaintiff
LCFC B2-208
P.O. Box 2
Lansing, Ks 66043
daviskevin948@yahoo.com

---

3 Opposing parties here had failed to show there is a genuine issue of fact in dispute, and to that extent the opposing parties **acquiesce** with plaintiff, i.e., NO ISSUE OF FACT IN DISPUTE. Therefore plaintiff claims can't be denied, and should not have been dismissed.

## CERTIFICATE OF SERVICE

I undersigned hereby certifies that service of the above and foregoing MOTION TO ALTER OR AMEND THE JUDGMENT UNDER Fed. R. Civ. Pro 59(e) by Sui Juris Plaintiff Kevin T. Davis, # 0083253 was E-filed on this 11th day of June, 2025, to:

>Clerk, U.S. District Court for the District of Kansas
>444 S.E. Quincy, Rm 490
>Topeka, Ks 66683
>PH: 785.338.5400
>E-mail: ksd_clerks_topeka@ksd.uscourts.gov

Copies was also served of the above and foregoing MOTION TO ALTER OR AMEND THE JUDGMENT UNDER Fed. R. Civ. Pro 59(e) by Sui Juris Plaintiff Kevin T. Davis, # 0083253 was mailed U.S. Postal pre-paid on this 11th day of June, 2025, to:

Victoria L. Toothaker | Att'y
KDOC
714 SW Jackson, Ste. 300
Topeka, Ks 66603
PH: 785.670.0019
Email: Victoria.Toothaker@ks.gov

Deana Johnson
General Counsel | Centurion LLC
1447 Peachtree St., NE Ste., 500
Atlanta, GA 30309
PH: 703.749.4600
Email:

CC: Jesse Howes, Chief Warden; [4] Dr. Fred Cannon, Regional Dental Dir., and; Jeanie Burk, RN, BSN, HSA

>Kevin T. Davis, #0083253
>Plaintiff, *Sui Juris*
>LCFC B2-208
>P.O. Box 2
>Lansing, Ks 66043

---

[4] Jesse Howes has resign as Chief Warden w/KDOC

6 of 6

# Receipt of Medical Equipment/Appliance Form
## Formulario de recibo de equipo médico/aparato

Name (Last, First, Middle)
Nombre (Apellido, nombre, segundo nombre)

DOC #
NÚM. DOCUMENTO

DOB
Fecha de nacimiento

Race/Sex
Raza/Sexo

Facility
Instalación

Acknowledge receipt of the following medical equipment or appliance:
Acuso recibo del siguiente equipo médico o aparato:

**Medical Equipment**
**Equipo médico**

**Serial Number, Prescription, Date Issued, Description, etc.**
**Número de serie, prescripción, fecha de provisión, descripción, etc.**

☐ Cane
Bastón

☐ Crutches
Muletas

☐ Dentures (5 years)
Dentaduras postizas (5 años)

☐ Eye Glasses (2 years)
Anteojos (2 años)

☐ Hearing Aid
Audífono

☐ Knee Brace
Rodillera

☐ Splint
Férula

☐ Prosthesis – describe:
Prótesis – describir:

☐ Wheelchair
Silla de ruedas

☐ Other – describe:
Otros – describir:

REF 79-87101
HCPC: 1,L3924(OTS)
2,L3923(CST)
LOT TJ03388240715
ABDUCTED THUMB SPICA,UNIV,LEFT

Order Expiration Date:
Fecha de vencimiento de la orden:

☐ I acknowledge that the equipment/appliance is functional for my use.
Reconozco que el equipo/aparato es funcional para mi uso.

☑ I acknowledge the equipment/appliance is in good working condition.
Reconozco que el equipo/aparato está en buenas condiciones de funcionamiento.

☑ I acknowledge that this equipment has been purchased for me by Centurion and that replacement of this equipment/appliance due to loss, damage or willful destruction is my responsibility.
Reconozco que Centurion compró este equipo para mí y que es mi responsabilidad el reemplazo de este equipo/aparato debido a pérdida, daño o destrucción intencional.

Inmate Signature  (Firma del recluso)

Date (Fecha)

Witness Signature  (Firma del testigo)

Date (Fecha)

White – Medical Records      Pink – Patient      Yellow – A&D

Centurion: REC-016-KS
07/01/2020


centurion.

28

PROCARE®

Thumb Spica

Supporto per abduzione del police
Sujeción del pulgar
Spica de pouce
Daumenschiene



DJO®





 

CE

| EC | REP |

MDSS GmbH
Schiffgraben 41
30175 Hannover, Germany

DJO, LLC
5919 Sea Otter Place,
Suite 200
Carlsbad, CA 92010 · USA

©2021 DJO, LLC        13-1375-0-00000 REV F · 2021-11-02

---

Ext. 2

### APPLICATION INSTRUCTIONS

Before applying the brace, please read these instructions completely and carefully.
Correct application is vital to the proper functioning of the brace.

INDICATIONS: Soft tissue injury to the thumb ● Arthritis ● Tendinitis
● deQuervains Syndrome

**INTENDED USER PROFILE:** The intended user should be a licensed medical
professional, the patient or the patient's caregiver. The user should be able to read,
understand and be physically capable of performing the directions, warnings and
cautions in the information for use.

**PERFORMANCE CHARACTERISTICS:**
· Soft-good/ semi-rigid designed to restrict motion through elastic or semi-rigid
construction.
· Providing immobilization or controlled movement of the limb or body segment.

**A** Detach forearm wrist straps.



**B** Slide thumb and forearm into splint,
and secure thumb strap.



**C** Wrap and attach forearm strap then
wrist strap. Straps should be snug but
not restrict circulaton.



### USE AND CARE

· Splint may be trimmed with scissors.

· Hand or machine wash in cold water with mild soap. Air dry. Do not bleach.

**WARRANTY:** DJO, LLC will repair or replace all or part of the unit and its accessories for
material or workmanship defects for a period of six months from the date of sale.

**WARNINGS AND PRECAUTIONS:**
· If you have skin disorders/injuries in the relevant part of the body, the product should
be fitted and worn only after consultation with a medical professional.
· Do not use over open wounds.
· If pain, swelling, changes in sensation or other unusual reactions occur while using
this product, you should contact your doctor immediately.
· Do not use this device if it was damaged and/or packaging has been opened.
**NOTE:** Contact manufacturer and competent authority in case of a serious incident
arising due to usage of this device.

**FOR SINGLE PATIENT USE ONLY**

**NOTICE: WHILE EVERY EFFORT HAS BEEN MADE IN STATE-OF-THE-ART TECHNIQUES
TO OBTAIN THE MAXIMUM COMPATIBILITY OF FUNCTION, STRENGTH, DURABILITY
AND COMFORT, THERE IS NO GUARANTEE THAT INJURY WILL BE PREVENTED
THROUGH THE USE OF THIS PRODUCT.**