**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 27, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

KEVIN TAMAR DAVIS,

    Plaintiff - Appellant,

v.

JESSE HOWES; JAMES SKIDMORE;
FRED CANNON; JEANIE BURK,

    Defendants - Appellees.

No. 25-3102
(D.C. No. 5:24-CV-03143-JWL)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, **BALDOCK**, and **MORITZ**, Circuit Judges.
_____

Kevin Tamar Davis, a state prisoner proceeding pro se, brought civil rights

claims against various Kansas healthcare and corrections officials.  The district court

screened the complaint as required by 28 U.S.C. § 1915A and, in a series of orders,

dismissed all counts for failure to state a claim.  Mr. Davis now appeals and moves to

proceed *in forma pauperis* ("IFP").  Exercising jurisdiction under 28 U.S.C. § 1291,

we dismiss the appeal but grant the IFP motion.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

**A.    The Complaint's Allegations**

*1.    Eighth Amendment deliberate indifference—need for endodontic care*

Mr. Davis is a prisoner in the custody of the Kansas Department of Corrections ("KDOC") at Lansing Correctional Facility ("LCF"). He alleges he has a "bifurcated dental issue," or a painful cyst growing within decaying bone tissue in his upper jaw. R. vol. I at 12 ¶¶ 12–13. According to Mr. Davis, proper treatment of his dental condition would require an apicoectomy (root end surgery).

In June 2023, Mr. Davis had a consultation with an off-site oral surgeon, Dr. Aaron Sterling Card. Dr. Card recommended an apicoectomy and referred Mr. Davis to an endodontic surgeon for more specialized care.

In October 2023, Mr. Davis learned that KDOC's Regional Dental Director, Defendant Fred Cannon, had denied Dr. Card's specialist referral. Instead, Dr. Cannon recommended extracting two of Mr. Davis's (otherwise healthy) front teeth. Mr. Davis declined the extraction and continued to request endodontic treatment, but he only received medications that did not improve his condition.

On November 14, 2023, Mr. Davis made a "Form 9 request" in an apparent effort to contact Dr. Cannon. *Id.* at 13 ¶ 21; *see id.* at 39. That same day, he received written responses providing Dr. Cannon's full name and employer, but also stating that Mr. Davis had "20 dental encounters since 1/1/23," that his providers' "recommendations have consistently been extraction of teeth 9 and 10," and that he

had "declined the treatment plan and requested time to consider this option." *Id.* at 39–40.

Count I alleges that Dr. Cannon and Defendant Warden Jesse Howes were deliberately indifferent to Mr. Davis's need for an apicoectomy in violation of the Eighth Amendment.

### 2. *Eighth Amendment deliberate indifference—need for medical appliances*

Mr. Davis wears a splint (wrist brace) due to paralysis in his left hand, as well as medical shoes to alleviate foot pain. In 2018, he was transferred from LCF to Hutchinson Correctional Facility ("HCF"), where his splint was confiscated because it contained a metal plate. Thereafter, Mr. Davis received new, non-metal splints in March 2018 and February 2019. He was then transferred back to LCF in 2021.

In November 2023, Dr. Mariah Kalma examined Mr. Davis and reapproved him for both medical shoes and a splint. However, KDOC's Health Services Administrator, Defendant Jeanie Burk, denied Dr. Kalma's request for the appliances. Ms. Burk later told Mr. Davis that he could not receive the shoes because he did not have diabetes.

Mr. Davis pursued LCF's emergency grievance process and filed a complaint with the ADA State Coordinator. On March 14, 2024, Mr. Davis received a written response to his ADA complaint stating that he had already received wrist splints in 2018 and 2019, that his November 2023 exam had revealed "no motor deficits," and that "objective findings for needing a brace and shoes were not met." *Id.* at 77–78.

3

Count II alleges that Ms. Burk was deliberately indifferent to Mr. Davis's needs for the splint and shoes in violation of the Eighth Amendment.

### 3.    *"Petit larceny," "profiteering," and due process violation from improper seizure of property*

Because of his hand paralysis, Mr. Davis was permitted at LCF to use a bag to carry his legal documents.  He thus purchased a "cardboard legal [satchel]" at a KDOC fundraiser "to enable his disability."  *Id.* at 14 ¶ 28.  He used this satchel for several years, including during his time at HCF and after his return to LCF in 2021.

On December 6, 2023, Defendant Deputy Warden James Skidmore, acting "in cahoots" with Mr. Howes, restricted Mr. Davis from carrying his satchel despite the lack of "any immediate threat to [the] security of the institution."  *Id.* ¶ 33; *see id.* at 43.  This restriction apparently did not change even after he showed Messrs. Skidmore and Howes that he had prior medical clearance to carry a bag to "accommodate[] his paralysis disability."  *Id.* ¶ 35.

KDOC's written response to Mr. Davis's ADA complaint indicated that LCF's on-site medical staff had re-evaluated Mr. Davis in February 2024, that it was found "to be medically appropriate for [him] to carry [his] books in a store bag when going to the library," and that Mr. Howes had agreed to this accommodation.  *Id.* at 77.

Count III alleges that by allowing Mr. Davis to buy the satchel at a KDOC fundraiser, and later seizing the satchel from him, Messrs. Skidmore and Howes had committed "petit larceny," "profiteering under the Anti Trust Law of 1897," and a due process violation.  *Id.* at 17 ¶ 69.

**B.    The Court Proceedings and *Martinez* Report**

Mr. Davis filed his complaint[1] in the U.S. District Court for the District of Kansas.  As to Counts I and II, the court ordered KDOC to file a *Martinez* report[2] in aid of its mandatory § 1915A screening.[3]  It further ordered Mr. Davis to show cause why Count III should not be dismissed—in the court's view, he had no private right of action regarding the crime of petit larceny, and he had failed to allege a violation of either his due process rights or any antitrust law.

Rather than showing cause, Mr. Davis moved for leave to amend Count III. The court dismissed Count III and denied the motion to amend as futile.

Meanwhile, KDOC filed the *Martinez* report.  Broadly speaking, the report stated that (i) Mr. Davis's dental condition had been "thoroughly and regularly assessed" by multiple providers; (ii) he had "refused to pursue the advice of medical staff" regarding the need to extract teeth 9 and 10; and (iii) previous apicoectomies

---

[1] In addition to Counts I–III, Mr. Davis alleges he exhausted his administrative remedies before filing the complaint.  In the *Martinez* report, KDOC denied that proper exhaustion had occurred.  The district court acknowledged the parties' dispute but made no ruling on the exhaustion issue.

[2] A *Martinez* report is a "judicially authorized investigative report prepared by prison officials to help the court determine if a pro se prisoner's allegations have any factual or legal basis."  *Simkins v. Bruce*, 406 F.3d 1239, 1240 n.2 (10th Cir. 2005) (internal quotation marks omitted); *see generally Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).

[3] Under 28 U.S.C. § 1915A, if a prisoner sues a governmental entity (or an officer or employee thereof), the district court must conduct a preliminary review of the complaint and dismiss any claims that are frivolous or malicious, that fail to state a claim, or that seek damages from a defendant with immunity.

5

had failed, and another apicoectomy was not indicated here. *Id.* at 167. The *Martinez* report further stated that his November 2023 exam had revealed "no significant signs of impairment warranting the issuance of" any medical appliances but, after subsequent exams in 2024, Mr. Davis had qualified for and received both a wrist brace and "Lifewalker strap shoes." *Id.* at 168.

Upon review of the *Martinez* report and Mr. Davis's written objection and response, the court dismissed Counts I and II. The court reasoned that his preference for an apicoectomy over extraction "simply constitutes a disagreement with the recommended course of treatment," *id.* at 336, and "[a] mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment," *id.* at 334–35. Further, Mr. Davis had not shown that any defendant was deliberately indifferent to his need for a wrist splint or medical shoes.

Mr. Davis timely moved to alter or amend the judgment under Rule 59(e), which the court denied. This appeal resulted.

## DISCUSSION

### A.    Inadequate Presentation

We construe pro se papers liberally, *see Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005), and we typically excuse a pro se party's inartful pleading and legal analysis, *see Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). That said, "pro se litigants must follow the same rules of procedure that govern other litigants." *Shrader v. Biddinger*, 633 F.3d 1235, 1249 n.9

6

(10th Cir. 2011). Pertinent here, we have held that Federal Rule of Appellate Procedure 28 "applies equally to pro se litigants." *Garrett*, 425 F.3d at 841 (internal quotation marks omitted). And under Rule 28, an opening brief must contain the "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(8)(A).

Here, Mr. Davis challenges as "objectively unreasonable" the district court's screening and dismissal of his claims under § 1915A. Aplt. Opening Br. at 4. Our review, however, is hampered by his failure to conform his briefing to Rule 28's requirements. In the opening brief, rather than advancing any meaningful argument, he simply incorporates several of his district court filings by reference. *See id.* at 2–3. Further, the opening brief does not "explain what was wrong with the reasoning that the district court relied on" in dismissing his complaint. *Nixon v. City & Cnty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015). Instead, Mr. Davis reserves his full-throated explanations of error for the reply brief. *See* Aplt. Reply Br. at 2–3, 4–8.

We have expressly disapproved the practice of incorporation by reference.[4] 10th Cir. R. 28.3(B); *accord United States v. Patterson*, 713 F.3d 1237, 1250

---

[4] This is so because allowing an appellant to parrot his district court filings in lieu of presenting developed argument would "unnecessarily complicate" our work and "provide an effective means of circumventing the page limitations on briefs set forth in the appellate rules." *Gaines-Tabb v. ICI Explosives, USA, Inc.*, 160 F.3d 613, 623–24 (10th Cir. 1998). Here, for instance, Mr. Davis purports to "reallege and incorporate by reference" his complaint, memorandum of law in support of the complaint, and 12 other district court filings. *See* Aplt. Opening Br. at 3. His brief

7

(10th Cir. 2013) (parties "cannot satisfy Rule 28 by incorporating their claims by reference to [filings] from the court below"); *Fulghum v. Embark Corp.*, 785 F.3d 395, 410 (10th Cir. 2015) (briefing via incorporation by reference "is not acceptable appellate procedure").  Likewise, we ordinarily decline to review issues raised for the first time in a reply brief.[5]  *See Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000); *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011); *see also Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (explaining that arguments must be raised and adequately presented in the appellant's *opening brief*).

"It is indisputably within our power as a court to dismiss an appeal when the appellant has failed to abide by the rules of appellate procedure."  *MacArthur v. San Juan Cnty.*, 495 F.3d 1157, 1161 (10th Cir. 2007); *accord Anderson v. Hardman*, 241 F.3d 544, 545–46 (7th Cir. 2001) ("[P]ro se litigants should expect that noncompliance with Rule 28 will result in dismissal of the appeal."); *see also* Fed. R. App. P. 3(a)(2) (a circuit court may address a party's noncompliance with the

---

on appeal would exceed the 30-page limit by roughly 53 pages if these filings—excluding their exhibits—were added to it.

[5] The reasons for this general rule are two-fold:

> First, to allow an appellant to raise an argument for the first time in a reply brief would be manifestly unfair to the appellee who, under our rules, has no opportunity for a written response.  Second, the rule also protects us from issuing an improvident or ill-advised opinion because we did not have the benefit of the adversarial process.

*United States v. Leffler*, 942 F.3d 1192, 1197–98 (10th Cir. 2019) (internal citations and quotation marks omitted).

appellate rules "as it considers appropriate, including [by] dismissing the appeal").

Here, Mr. Davis's briefing—which rests on incorporated district court filings and

arguments raised for the first time in the reply brief—is just the sort of inadequate

presentation that "disentitle[s] him to review by this court." *Garrett*, 425 F.3d

at 841; *see Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994)

("perfunctory" allegations of error "fail to frame and develop an issue sufficient to

invoke appellate review").

Accordingly, we decline to review the issues identified in the opening brief

and dismiss the appeal for Mr. Davis's noncompliance with Rule 28.

**B.    IFP Motion**

Mr. Davis also moves to proceed IFP on appeal.  Notwithstanding our

dismissal of the action for the Rule 28 violations catalogued above, our review of the

parties' briefing and record below allows us to glean—albeit *faintly*—"the existence

of a reasoned, nonfrivolous argument on the law and facts." *DeBardeleben v.*

*Quinlan*, 937 F.2d 502, 505 (10th Cir. 1991) (citing 28 U.S.C. § 1915(a)).  We

therefore grant the IFP motion.  That said, we remind Mr. Davis that dismissal of the

appeal does not relieve him of his obligation to pay the full filing fee.  *See Kinnell v.*

*Graves*, 265 F.3d 1125, 1129 (10th Cir. 2001).

**C.    PLRA Strikes**

Mr. Davis had already acquired his first PLRA strike before this appeal.  *See*

*Davis v. Newton, et al.*, No. 5:04-cv-03298-SAC, Dkt. No. 3 at *3 n.2 (D. Kan. Sept.

27, 2004).  In the present case, the district court screened and dismissed Mr. Davis's

complaint for failure to state a claim under § 1915A(b)(1), which counts as a second PLRA strike. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). We caution Mr. Davis that imposition of a third PLRA strike will result in his inability, while incarcerated, to bring a new federal civil action or appeal without prepaying the full filing fee unless he is "under imminent danger of serious physical injury." § 1915(g); *see also Kinnell*, 265 F.3d at 1129.

## CONCLUSION

For the above reasons, we DISMISS Mr. Davis's appeal, and we GRANT his IFP motion.

Entered for the Court

Bobby R. Baldock
Circuit Judge